UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STELLA L. CUNNINGHAM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17-cv-7013 |
| | ) | |
| v. | ) | Magistrate Judge Susan E. Cox |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Stella L. Cunningham ("Plaintiff") appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability insurance benefits under Titles II and XVI of the Social Security Act. For the following reasons, Plaintiff's motion is denied (Dkt. 13), the Commissioner's motion (Dkt. 22) is granted, and the Administrative Law Judge's decision is affirmed.

**I. Background**

    **a. Procedural History and Claimant's Background**

Plaintiff filed an application for disability insurance benefits on June 4, 2014, with an alleged onset date of disability as of January 1, 2014. (Administrative Record ("R") 91.) Her initial application was denied on October 28, 2014, and again at the reconsideration stage on May 1, 2015. (R. 91.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 19, 2016. (R. 91.) On October 28, 2016, the ALJ issued a written decision finding Plaintiff was not disabled within the meaning of the Act and denying Plaintiff's application. (R. 91-104.) On July 30, 2017, the appeals council denied Plaintiff's request for review, thereby rendering the ALJ's decision as the final decision of the agency. (R. 1-6); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994).

b. **Medical Evidence**

Most of Plaintiff's medical evidence in the administrative record comes from her treating primary care physician, Dr. Varsha Bilolikar, M.D.; the Court will only discuss those medical findings that are potentially relevant to Plaintiff's claims.[1] For the vast majority of the visits with Dr. Bilolikar, Plaintiff reported that she was experiencing no pain affecting her activity level and was seeking medication refills for her diabetes mellitus or presenting with issues unrelated to the current case. On May 23, 2014, Plaintiff presented with a "diabetic foot laceration" from stepping on a piece of glass. (R. 388-89.) She said that the pain from the foot laceration affected her activity level. (R. 389.) She had decreased sensation surrounding the laceration, and was ordered to stay off her foot as much as possible. (R. 390.) On July 8, 2014, when Plaintiff followed up for her foot, she reported that it had healed and that she no longer had any pain relating to the foot. (R. 394.)

On September 21, 2015, Plaintiff followed up with Dr. Bilolikar after having gone to Holy Cross Hospital due to chronic hip issues. (R. 413.) Plaintiff claimed she had been diagnosed with a right hip fracture at Holy Cross. (R. 414.) However, she once again stated that she did not have any pain affecting her activity level, but did report having "nerve pain" in her right leg. (*Id.*) Dr. Bilolikar referred Plaintiff to an orthopedist and prescribed Norco and Naproxen for the pain. (R. 416.)

On December 31, 2015, Plaintiff's chief complaint was listed as "[r]eturn to work statement off for elevated sugar." (R. 421.) It is unclear how long Plaintiff had been off work, or what type of statement she was seeking at that time. On January 7, 2016, Plaintiff sought to have Dr. Bilolikar complete forms related to Plaintiff's work restrictions. At that time, Plaintiff reported that she was working for Amazon, and on her feet for 10 hours per day; she had not followed up with the orthopedist for her right hip, and reported no pain affecting her activity levels. (R. 427.) It is unclear

---

[1] There are several hospital visits not relevant to the discussion herein. (*See* R. 258-319; 340-67; 491-500.)

whether Dr. Bilolikar ever completed the aforementioned forms, as they do not appear in the administrative record.

On February 25, 2016, Plaintiff was seen by Dr. Bilolikar related to an elbow injury she suffered. (R. 438.) According to this note, Plaintiff was excused from work for six weeks by the orthopedist "due to hip fracture and arthritis," and Plaintiff had "paperwork to be filled for fracture of right hip" for the orthopedist. (*Id*.) No such records from the orthopedist appear in the record. On March 28, 2016, Plaintiff reported to Dr. Bilolikar that she had seen the orthopedist, who diagnosed her as having arthritis in both hips. (R. 449.) On June 27, 2016, Plaintiff presented to Dr. Bilolikar, stating that she was stressed that she was unable to work due to pain in her hips and that she had been diagnosed with bilateral hip arthritis. (R. 481.)

The administrative record includes some diagnostic testing as well. An x-ray of Plaintiff's hip taken on November 2015 showed no acute findings, but did show a "triangular-shaped well-corticated ossific density involving the right posterior acetabulum," which "may represent an os acetabula or remote trauma." (R. 334.) The x-ray also showed similar findings in Plaintiff's left hip, as well as two screws from a previous hip injury.[2] (*Id*.) According to the record, the pelvis x-ray was compared to an x-ray from September 15, 2015. (*Id*.) The record also contains an orthopedic consultation note from Dr. James Schiappa, stating that Plaintiff was seen on January 30, 2016 "status post a fractured chip fracture of the acetabulum, right hip on 9/15/15." (R. 331.) There are no records the Court can find dated September 15, 2015.

On August 24, 2016, Plaintiff had another hip x-ray, which showed "marked foreshortening and mild deformity" in Plaintiff's left femoral neck, hypertrophic changes at the "superolateral left acetabulum," and mild degenerative changes in both hips. (R. 490.) In Plaintiff's right hip, there

---

[2] Plaintiff testified that she broke her left hip when she was 12 years old, and had to have pins put in to stabilize her hip. (R. 26.)

3

was a "vertical linear lucency," which "likely represent[ed] old fracture, initially seen on right hip exam of 9/15/15." (*Id.*)

The record also contains several opinions from Dr. Georges Germain, who is reportedly another of Plaintiff's treating physicians. The only documents in the record from Dr. Germain are these opinions; there are no treatment notes, test results, or other evidence from Dr. Germain. First, on April 9, 2012, Dr. Germain opined that Plaintiff could not lift more than 10 pounds at a time, had between 20-50% reduced capacity in walking, bending, standing, stooping, sitting, turning, and ability to perform activities of daily living, and a more than 50% reduced capacity in climbing. (R. 244.) Dr. Germain reported that he had been treating Plaintiff since 1995 on a yearly basis, and that she had been hospitalized four times in 2012 for diabetic foot ulcers.

Second, on September 3, 2014, Dr. Germain issued another opinion, stating that Plaintiff could sit for only 15 minutes at a time, stand/walk for only 10 minutes at a time, sit for one hour in an eight-hour workday, and stand/walk for one hour in an eight-hour workday. (R. 247.) Dr. Germain believed that Plaintiff would need to take unscheduled work breaks every 15 minutes, lasting up to 30 minutes, and that she could never lift more than 10 pounds. (*Id.*) According to Dr. Germain, Plaintiff was not physically capable of working an eight-hour day for five days per week on a sustained basis. (R. 248.) In this questionnaire, Dr. Germain stated he had been treating Plaintiff since February, 27, 2012. (R. 249.)

Finally, on March 11, 2016, Dr. Germain issued an updated opinion. Dr. Germain noted that Plaintiff suffered from severe degenerative hip problems, and diabetes with a resulting foot ulcer. (R. 324-25.) Dr. Germain further opined that Plaintiff could not lift more than 10 pounds at a time, had greater than 50% reduced capacity in walking, bending, standing, stooping, sitting, turning, climbing, pushing, pulling, speaking, using public transportation, and ability to perform activities of daily living, and up to 20% reduced capacity in fine manipulation, gross manipulation, and

bilateral finger dexterity. (R. 326.)

   c.   **The ALJ's Decision**

On October 28, 2016, the ALJ issued a written decision denying Plaintiff disability benefits. (R. 91-104.) As an initial matter, the ALJ found that Plaintiff met the insured status requirements of the Act through September 30, 2016. (R. 93.) At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since her alleged onset date of January 1, 2014. (*Id.*) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: diabetes mellitus, obesity, degenerative joint disease of the hip, hypertension, and heart disease. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 94.) Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[3] to perform light work, with the following limitations: frequent operation of foot controls; no climbing ladders, ropes or scaffolds; only occasional climbing ramps and stairs, balancing, stooping, crouching, kneeling, and crawling; avoiding concentrated exposure to moving machinery or unprotected heights; and a sit/stand option that would allow her to sit for five minutes after working for 30 minutes, provided she was not off-task for more than 10% of her work period. (R. 95.) At step four, the ALJ found that Plaintiff was not capable of performing her past relevant work. (R. at 102.) Finally, at step five, the ALJ found there were jobs that existed in significant numbers in the national economy Plaintiff could perform considering RFC, age, education, and work experience in conjunction with the Medical-Vocational guidelines (20 CFR Part 404, Subpart P, Appendix 2). (R. 103.) Because of this determination, the ALJ found Plaintiff not disabled under the Act. (*Id.*)

---

[3] RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

In reaching his decision, the ALJ gave "slight weight" to the opinions of Dr. Germain. (R. 101.) The ALJ found that Dr. Germain's opinions were not supported by the evidence (*Id.*) For example, while Dr. Germain believed Plaintiff had severe degenerative changes in her hips, the 2016 x-ray showed only mild degenerative changes. (*Id.*) Despite Dr. Germain's finding that Plaintiff suffered from foot ulcers, the only evidence in the record of foot problems was Plaintiff laceration, which healed. (*Id.*) The ALJ also pointed out that it was impossible to tell how long or how often Dr. Germain had treated Plaintiff without any treatment notes in the record. (*Id.*) The ALJ then concluded that

> Dr. Germain's statement regarding the clinical signs and severity of claimant's impairment is contradicted by the medical evidence in the record, he has failed to provide any treatment notes despite have (sic) ample opportunity to do so, and his reported frequency of contact with claimant is far less than the claimant's other provider, Dr. Bilolikar, who saw the claiming more frequently, and whose treatment notes do not show the degree of impairment Dr. Germain described.

(R. 101-02.)

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing her past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider

the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young v. Barnhart*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless build a "logical bridge" between the evidence and her conclusion. *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

The only argument that Plaintiff presents in her memorandum in support of her motion is that the ALJ's decision should be reversed because his "RFC is unsupported by substantial evidence, as he relied on his own lay interpretation of the medical evidence in weighing the opinion of Plaintiff's

treating physician, Dr. Germain." (Dkt. 14 at 8.)

The "treating physician" rule requires that an ALJ give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence. 20 C.F.R. § 404.1527(d)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). A treating physician's opinion is given controlling weight because "a treating physician has the advantage over other physicians whose reports might figure in a disability case because the treating physician has spent more time with the claimant." *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Otherwise, the ALJ must "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

When an ALJ decides for good reasons not to give controlling weight to a treating physician's opinion, he must determine what weight to give to it and other available medical opinions in accordance with a series of factors. These factors include the length, nature, and extent of any treatment relationship; the frequency of examination; the physician's specialty; the types of tests performed; and the consistency of the physician's opinion with the record as a whole. *Yurt v. Colvin*, 758 F.3d at 860; *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see* 20 C.F.R. § 404.1527(c), 416.927(c). An ALJ must provide "sound explanation" for the weight he gives each opinion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013). If he does not discuss each factor explicitly, the ALJ should demonstrate that he is aware of and has considered the relevant factors. *Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013).

Here the ALJ found that Dr. Germain's opinion was not entitled to controlling weight because it did not have any support in the record, and was inconsistent with other substantial evidence in the record. The ALJ gave "good reasons" for this finding, noting that Dr. Germain did

not provide any treatment notes to support his findings, and they were contradicted by Dr. Bilolikar's records, which did not reflect a severity of Plaintiff's conditions commensurate with the opinions issued by Dr. Germain. In fact, some of Dr. Germain's findings were explicitly undermined by some of the diagnostic testing in the record, showing only mild degenerative changes in Plaintiff's hips. Therefore, there was certainly substantial evidence in the record to support the ALJ's decision to accord only "slight weight" to Dr. Germain's opinions, and the Court will not reverse the opinion on that issue. In short, the ALJ provided enough information to support "the grounds for [his] decision" not to grant the opinions of Dr. Germain controlling weight. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002).

The ALJ also properly considered the factors described above. The ALJ noted that it was unclear how often Plaintiff treated with Dr. Germain due to the lack of treatment records, but that even the reported yearly visits would have been less often than Plaintiff's course of treatment with Dr. Bilolikar. The ALJ also discussed the consistency (or lack thereof) of Dr. Germain's opinions with the record as a whole, as described above. There is no evidence that Dr. Germain had any specialty, and the ALJ need not discuss a specialty that does not appear to exist. Ultimately, the ALJ either discussed or demonstrated awareness of all of the relevant factors, thereby satisfying the requirements set forth in the regulations. As such, the ALJ did not commit an error when weighing Dr. Germain's opinions, and the Plaintiff's arguments to the contrary are rejected.

## IV. Conclusion

The ALJ did not commit any legal error in their decision to deny Plaintiff Social Security Benefits. The ALJ provided substantial evidence to support each step of his analysis in accordance with applicable law. Those findings will not be disturbed by this Court. Plaintiff's Motion to Reverse the Final Decision of the Commissioner of Social Security (Dkt. 13) is denied. The Commissioner's Motion for Summary Judgment (Dkt. 22) is granted.

9

Entered: 7/27/18

_____
U.S. Magistrate Judge, Susan E. Cox